UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNECTUS LLC,

     Plaintiff,

v.                                    Case No: 8:15-cv-2778-T-33JSS

AMPUSH MEDIA, INC. and DGS EDU,
LLC,

     Defendants.

_____/

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Compel Interrogatory Responses and Documents from Defendants ("First Motion") (Dkt. 75), and Plaintiff's Motion to Compel Responses to Written Discovery ("Second Motion") (Dkt. 100). Defendants oppose the motions. (Dkts. 99, 108.) On November 29, 2016, the Court held a hearing on the motions. After the hearing, Plaintiff's counsel submitted to the Court copies of the discovery requests, objections, and responses at issue to aid the Court in its review of the motions. For the reasons that follow, the First Motion is denied and the Second Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff operates a website that collects information from prospective students that Plaintiff uses to match the prospects with universities. (Dkt. 106 ¶ 14.) This data, Plaintiff alleges, is "extraordinarily proprietary and highly valued by Universities seeking to acquire Prospective Students." (Dkt. 106 ¶ 14.) Plaintiff refers to prospective students "as well as the proprietary data acquired therefrom" as "Leads." (Dkt. 106 ¶ 14.)

Plaintiff matches prospective students with universities either directly or by using intermediaries who have relationships with universities ("Aggregators"). (Dkt. 106 ¶ 15.)

Aggregators maintain databases that contain data about the programs offered by universities and Plaintiff, in determining university matches for prospective students, "'ping[s]' data relating to each Prospective Student against each Aggregator's portal." (Dkt. 106 ¶ 17.) After a match is found, Plaintiff obtains further information from a prospective student and confirms the match. (Dkt. 106 ¶ 18.) Then, Plaintiff sells the Lead to the Aggregator, who in turn sells the Lead to the university. (Dkt. 106 ¶ 18.) Plaintiff alleges that it does not, however, "submit or sell Leads to Aggregators" during the "ping" stage. (Dkt. 106 ¶ 19.)

Defendant Ampush Media, Inc. ("Ampush") is one such Aggregator. (Dkt. 106 ¶ 15.) Plaintiff and Ampush entered into a contract governing Plaintiff's sale of Leads to Ampush ("Agreement"). (Dkt. 106 ¶ 20; Dkt. 106-1.) DGS is Ampush's successor in interest who acquired, among other things, the Agreement. (Dkt. 106 ¶ 21.) Plaintiff alleges that "Defendants had been scraping, digitally copying or otherwise misappropriating Plaintiff's proprietary Lead generation data early in Plaintiff's Lead generation process, at the Ping/Search Stage, but before Plaintiff had submitted or sold the Lead to Defendants." (Dkt. 106 ¶ 25.) Defendants, Plaintiff alleges, then sold the data to third parties. (Dkt. 106 ¶¶ 27–29.) Plaintiff contends that these stolen Leads exceed $19 million in value. (Dkt. 106 ¶ 31.)

Among other affirmative defenses, Defendants raise the defenses that Plaintiff's claims are barred to the extent Plaintiff consented to the alleged actions, the alleged actions are considered an acceptable industry practice, and Plaintiff failed to use reasonable efforts to protect any alleged confidential or proprietary information. (Dkt. 112 at 21; Dkt. 113 at 22.)

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery.

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).  Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Courts consider the following factors when evaluating whether requested discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

With regard to responding to interrogatories, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2).  In situations where "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party," the party responding to the interrogatory may answer the interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" and "giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Fed. R. Civ. P. 33(d).

Requests for admissions may relate to "facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1).  Answers, if not an admission, must be a denial or must "state in detail why the answering party cannot truthfully admit or deny it," and the answering party must, if applicable and if good faith requires, "specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).  Further, lack of knowledge or information "as a reason for

failing to admit or deny" may be asserted in response to a request for admission "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Fed. R. Civ. P. 36(a)(4).  A request for admission is not objectionable "solely on the ground that the request presents a genuine issue for trial."  Fed. R. Civ. P. 36(a)(5).  A court must order that a request for admission be answered unless an objection is justified and, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).

In terms of producing electronically stored information, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," and "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(E).  However, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2)(B).  The party from whom discovery is sought bears the burden of showing "that the information is not reasonably accessible because of undue burden or cost," although this may be overcome by the requesting party with a showing of good cause.  Fed. R. Civ. P. 26(b)(2)(B).

Finally, parties must supplement or correct their responses to interrogatories, requests for production, and requests for admissions "if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  Should a party fail to supplement its discovery responses as required by Rule

26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

## ANALYSIS

### I.    First Motion

In the First Motion, the discovery requests at issue are as follows: Interrogatories to Ampush numbers 2 through 7, Set 1; Requests for Production to Ampush numbers 3 through 6, Set 1; Interrogatories to DGS number 8, Set 1, and numbers 2, 3, 8, and 9, Set 2;[1] and Requests for Production to DGS numbers 3 through 6, and 8, Set 1, and number 1, Set 2.  (Dkt. 75.)

In response to the bulk of these requests—Interrogatory 8, Set 1, and Interrogatories 2, 3, 8, and 9, Set 2, to DGS, and Requests for Production numbers 3, 4, 6, and 8, Set 1, and number 1, Set 2, to DGS,  Interrogatories 2 through 7, Set 1, to Ampush, and Requests for Production numbers 3, 4, and 6, Set 1, to Ampush—DGS served responses to the interrogatories, answering that it received a total amount of approximately $975,000 and Defendants served documents responsive to the production requests.

At the hearing Plaintiff contended that the discovery DGS served was a summary and does not satisfy the Plaintiff's requests for detailed responses.  In response, DGS's counsel explained that it cannot provide the specifics of Plaintiff's requests due to the way DGS's systems accumulate data and that what is has already provided is all that it can provide in response.  Further, DGS's counsel stated that he believes DGS has already produced a list of third parties to whom DGS sold data, but will provide this list if DGS has not already served it.  Ampush's counsel stated that all responsive discovery in Ampush's possession has been produced.  Accordingly, the Motion is

---

[1] At the hearing, Plaintiff withdrew the First Motion as to Interrogatory 7, Set 1, and Interrogatory 7, Set 2, to DGS.

denied as to these requests as Defendants have fully complied with the requests.  To the extent applicable, Defendants should supplement their responses in accordance with Rule 26(e); a failure to do so will preclude Defendants from using such information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Finally, Plaintiff seeks to compel documents from Defendants regarding the sale of Ampush's education business to DGS in Requests for Production 5 to Ampush and DGS, specifically "[a]ll documents or reports" related to the sale.  (Dkt. 75 at 8.)  Plaintiff argues that the requested documents "are relevant to show what the parties believed was the value of the business unit DGS bought from Ampush, which in turn, will be supportive of [Plaintiff's] damages theory."  (Dkt. 75 at 9.)  At the hearing, Defendants stated that, in October 2016, they provided Plaintiff with the asset purchase agreement between Ampush and DGS.

In light of the fact that Defendants have produced the asset purchase agreement evidencing the sale between Ampush and DGS and considering that the amount DGS valued Ampush's education business is of little importance in determining Plaintiff's damages from Defendants' alleged conduct of selling leads it did not pay Plaintiff for, the Court concludes that the burden on Defendants in producing "all documents and reports" related to the sale outweighs any likely benefit of such discovery.  Fed. R. Civ. P. 26(b)(1).  The First Motion is therefore denied as to Request for Production 5, Set 1, to Ampush and Request for Production 5, Set 1, to DGS.

## II.    Second Motion

In the Second Motion, the discovery requests in dispute are directed to Ampush and are as follows: Interrogatories 1 through 6, Set 2; Requests for Admissions 1 through 19, Set 1, and 1 through 16, Set 2; and Requests for Production 1 through 51, Set 2.  (Dkt. 100.)

In opposition to the Second Motion, with regard to Plaintiff's requests for production and interrogatories, Ampush argues that, having sold its education business to DGS, the information and documents requested by Plaintiff are not in Ampush's possession or under its control.  (Dkt. 108 at 1–3.)  Nonetheless, Ampush states that it has searched for responsive documents and has produced sixty-one spreadsheets, as Plaintiff acknowledges.  (Dkt. 108 at 3–4, 19; Dkt. 100 at 5.)  Ampush states that it has no other responsive materials in its possession.  (Dkt. 108 at 4.)  Accordingly, the Second Motion is denied as to Interrogatories 1 through 5, Set 2, and Requests for Production 1 through 51, Set 2.  However, as Ampush's counsel agreed to at the hearing, Ampush shall produce its manipulated versions of the data it has already produced to Plaintiff's counsel.  Further, Ampush is under the duty to supplement its responses in accordance with Rule 26(e), as applicable.

In Interrogatory 6, Set 2, Plaintiff requests that Ampush describe the "factual and legal basis for [its] contention that Plaintiff 'abandoned' leads."  (Dkt. 100 at 6.)  In response, Ampush objected on the basis that it is unable to locate the definition of "abandoned leads" and thus it lacks knowledge sufficient to answer the interrogatory.  (Dkt. 100 at 6.)  However, Ampush's response is belied by an affirmative defense raised in its original answer to the second amended complaint, although not raised in its *amended* answer to the second amended complaint (Dkt. 112), that Plaintiff's claims were barred to the extent Plaintiff "abandoned any or all of the alleged property that is the subject of its claims."  (Dkt. 110 at 21.)  Further, an interrogatory is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2).  Accordingly, the Second Motion is granted as to Interrogatory 6, Set 2.

With regard to Plaintiff's requests for admissions, a request may seek an admission relating to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). Requests for admission, however, "may not seek an admission as to a pure conclusion of law." *Tobkin v. The Florida Bar*, 509 B.R. 731, 734 (S.D. Fla. 2014). Ampush argues that Plaintiff's requests for admissions improperly seek conclusions of law. (Dkt. 108 at 5.) Upon review of Plaintiff's first set of requests for admissions, the Court agrees with Ampush as to Request for Admission 2, Set 1. Accordingly, the Second Motion is denied as to Request for Admission 2, Set 1, because it improperly seeks an admission as to a conclusion of law.

As to Requests for Admissions 1 and 3 through 18, Set 1, Ampush responded to each identically, stating that it has insufficient information to admit or deny these requests because the requests' use of the term "qualified lead" is undefined and subject to multiple interpretations. (Dkt. 100 at 9–11.) Plaintiff contends that Ampush's response is "hard to believe" because Ampush itself used this term in its interrogatories to Plaintiff, in which Ampush defined "qualified leads" and "unqualified leads" as referring to the meaning of those terms in the Agreement.[2] (Dkt. 100 at 7–8, Dkt. 100-9 ¶ 6.)

The Court agrees with Plaintiff. Lack of knowledge or information "as a reason for failing to admit or deny" a request for admission may be asserted in response to a request for admission "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Further, "[w]hen in doubt about the meaning of an interrogatory, the responding party should give it a reasonable interpretation (which may be specified in the response) and offer an answer designed to provide, rather than deny, information." M.D. Discovery Handbook § IV.A.3. Here, as Plaintiff

---

[2] Under the Agreement, to be a "Qualified Lead," the lead must have certain specified information, including without limitation, a lead's name, program of interest, and level of education. (Dkt. 106-1 § 1.4.)

has shown, the Agreement between Ampush and Plaintiff defines "qualified lead" and Ampush has itself used this term in its own discovery requests. Thus, Ampush has the information available to allow it to answer these requests for admissions and, to the extent Ampush is unsure of the term's meaning, it "should give it a reasonable interpretation (which may be specified in the response) and offer an answer designed to provide, rather than deny, information." *See* Fed. R. Civ. P. 36(a)(4); M.D. Discovery Handbook § IV.A.3. Accordingly, the Second Motion is granted as to Requests for Admission 1 and 3 through 18, Set 1.

Request for Admission 19, Set 1, requests that Ampush admit that it is industry custom for leads to be sold a maximum of three times. (Dkt. 100 at 10.) Ampush responded that it had insufficient information to admit or deny this request because it was vague in that it does not define the identities of sellers or identify the numbers of sellers. This request is relevant to Ampush's affirmative defense that Plaintiff's claims are barred to the extent Ampush's alleged actions are "considered acceptable industry custom and practice." (Dkt. 112 at 21.) Further, the request is proper because it requests an admission regarding a fact or an opinion about a fact. *See* Fed. R. Civ. P. 36(a)(1)(A). Accordingly, the Motion is granted as to Request for Admission 19, Set 1.

Finally, as to Requests for Admissions 1 through 16, Set 2, Ampush responded that these requests improperly seek legal conclusions and, to the extent they do not, Ampush lacked sufficient knowledge to respond with an admission or denial. (Dkt. 100 at 11–12.) These requests seek Ampush to make admissions about the application of certain provisions of the Agreement. As Plaintiff argues (Dkt. 100 at 13–14), "a request for admission that relates to the interpretation of a contract at issue in the case" is an example of a proper request for an admission "involving the application of law to fact." *Argus & Associates, Inc. v. Prof'l Benefits Servs., Inc.*, No. 08-10531, 2008 WL 5447738, at *3 (E.D. Mich. Dec. 31, 2008); *James v. UMG Recordings, Inc.*, No. C 11-

1613 SI (MEJ), 2013 WL 5402045, at *1 (N.D. Cal. Sept. 26, 2013) ("A request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case, and is thus permissible under amended Federal Rule of Civil Procedure 36."); *See* Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment (explaining that examples of admissions involving the application of law to fact are "that an employee acted in the scope of his employment" or that the premises on which an accident at issue occurred were under the defendant's control). Accordingly, these requests are proper and the Motion is granted as to Requests for Admissions 1 through 16, Set 2.

Accordingly, it is

**ORDERED**:

1.      The First Motion (Dkt. 75) is **DENIED**.

2.      The Second Motion (Dkt. 100) is **GRANTED** in part as to Interrogatory 6, Set 2, Requests for Admissions 1 and 3 through 19, Set 1, and Requests for Admissions 1 through 16, Set 2, and **DENIED** in part as to Interrogatories 1 through 5, Set 2, Requests for Production 1 through 51, Set 2, and Request for Admission 2, Set 1.

3.      Within five (5) days of entry of this order, Ampush is directed to serve discovery responsive to Interrogatory 6, Set 2, Requests for Admissions 1 and 3 through 19, Set 1, and Requests for Admissions 1 through 16, Set 2.

**DONE** and **ORDERED** in Tampa, Florida on November 30, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

- 10 -