UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNECTUS LLC,

      Plaintiff,

v.                              Case No. 8:15-cv-2778-T-33JSS

AMPUSH MEDIA, INC., et al.,

      Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant DGS Edu, LLC's Motion for Judgment on the Pleadings (Doc. # 114), filed on November 22, 2016. That same day, Defendant Ampush Media, Inc. filed its Notice of Joinder in Defendant DGS Edu, LLC's Motion for Judgment on the Pleadings, which includes additional, separate substantive arguments than those raised by DGS Edu. (Doc. # 115). Plaintiff Connectus LLC filed its response to DGS Edu's Motion and Ampush's Joinder, which Connectus construed as a Rule 12(c) motion, on December 22, 2016. (Doc. ## 164, 166). DGS Edu and Ampush filed their respective replies on January 5, 2017. (Doc. ## 178, 181).

Also pending before the Court is Connectus's Conditional Motion to Amend Complaint. (Doc. # 167). Defendants timely

filed a response in opposition. (Doc. # 177). For the reasons that follow, the Rule 12(c) Motion and Ampush's Joinder, which the Court also construes as a Rule 12(c) motion, are granted. Connectus's Conditional Motion to Amend is granted.

## I.   **Background**

Connectus provides an informational service that seeks to connect prospective students with post-high school educational institutions, such as universities. (Doc. # 106 at ¶ 12). To do so, Connectus engages in lead generation, a process which generates data on prospective students through the use of opt-in websites. (Id. at ¶ 13). The data generated during lead generation is "extraordinarily proprietary." (Id.). If, during the lead generation process, a prospective student agrees to be contacted, a Connectus representative from its call center contacts the prospective student to collect more information. (Id. at ¶ 14). The goal is to match a prospective student to a university or universities and then sell that "lead" to the matched university or universities. (Id. at ¶¶ 14, 18).

Connectus has its own list of universities with which it directly does business; however, if a prospective student does not match with one of the universities that directly do business with Connectus, Connectus turns to an aggregator.

(Id. at ¶ 15). An aggregator is an intermediary that has business relationships with one or several universities; Ampush is one such aggregator. (Id.). Each aggregator maintains its own database, or portal, detailing the programs offered by its affiliate universities. (Id. at ¶ 16). Connectus will "ping," i.e., search, an aggregator's portal to determine if that aggregator has a business relationship with a university that is a potential match for the prospective student. (Id. at ¶ 17). If a potential match is found, Connectus gathers more information from the prospective student, confirms the match, obtains the prospective student's consent to "various disclosures," and then sells the lead to the aggregator, which in turn sells the lead to the matched university. (Id. at ¶¶ 17-18). "Under no circumstances does [Connectus] submit or sell Leads to Aggregators at the Ping/Search Stage." (Id. at ¶ 19).

To govern the sale of its leads to aggregators, Connectus enters into contracts with its aggregators. (Id. at ¶ 20). Connectus entered into one such contract with Ampush. In relevant part, the contract stated:

1.1  Scope

This Service Level Agreement (this "Agreement"), entered into on May 31, 2013, by and between Ampush Media, Inc. ("AMPUSH") and

EDegreeAdvisor, LLC[1]("VENDOR") governs the rights and responsibilities of the foregoing parties with respect to the call center services provided by VENDOR to AMPUSH at all times throughout the course of their business relationship (the "Service Period").

. . . .

1.4  Definitions

. . . .

Confidential Information:     Means     any confidential or proprietary information, source code, software tools, designs, schematics, plans or any other information relating to any research project, work in process, future development, scientific, engineering, manufacturing, marketing or business plan or financial or personnel matter relating to either party, its present or future products, sales, supplies, clients, client lists or other client information, employees, investors or business, disclosed by one party to the other party, whether in oral, written, graphic or electronic form, and whose confidential or proprietary nature is identified at the time of such disclosure or by the nature of the circumstances surrounding disclosure should reasonably be understood to be confidential.

. . . .

5.1  Non-Disclosure

Each party agrees that it will not make use of, disseminate or in any way disclose the other party's Confidential Information to any person, firm or business, except as authorized in this Agreement and to the extent necessary for performance of this Agreement. Each party agrees that it will disclose Confidential Information only to those of its employees and contractors who need

---

[1] Connectus does business as EDegreeAdvisor.

to know such information and who have previously agreed to be bound by the terms and conditions of this Agreement. Each party agrees that it will treat all Confidential Information of the other party with the same degree of care as it accords its own confidential information; each party represents that it exercises reasonable care to protect its own confidential information.

. . . .

   6.   GOVERNING LAW & ATTORNEYS' FEES

   **The interpretation and construction of this Agreement and all matters relating hereto shall be governed by the laws of the State of California.** . . .

. . . .

   13.   LIABILITY

   IN NO EVENT SHALL EITHER VENDOR OR AMPUSH BE LIABLE FOR ANY LOST PROFITS, LOST REVENUES OR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT, EVEN IF SUCH DAMAGES ARE FORESEEABLE AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL EITHER PARTY'S LIABILITY HEREUNDER EXCEED THE PAYMENTS MADE BY AMPUSH TO VENDOR IN THE TWELVE (12) MONTHS PRECEEDING THE EVENT GIVING RISE TO THE CLAIM.

(Doc. # 106, Ex. A at ¶¶ 1.1, 1.4, 5.1, 6, 13) (emphasis added).

On October 31, 2013, DGS Edu acquired Ampush's education business, including the agreement entered into by Connectus and Ampush. (Doc. # 106 at ¶ 21). After DGS Edu acquired Ampush's education business, Connectus began receiving

complaints from its universities and other aggregators that the leads being sold to them had been called multiple times before the lead could be utilized by the purchaser. (Id. at ¶ 22). As such, Connectus began to investigate what was causing the complaints. (Id. at ¶ 23). Connectus's

> investigation revealed that rather than purchasing the Leads at the end of the client verification process, [Ampush and DGS Edu] had been scraping, digitally copying or otherwise misappropriating [Connectus's] proprietary Lead generation data early in [Connectus's] Lead generation process, at the Ping/Search Stage, but before [Connectus] had submitted or sold the Lead to [Ampush or DGS Edu].

(Id. at ¶ 25). The investigation also "revealed that [Ampush and DGS Edu] . . . sold the misappropriated Lead generation data to several of [their] third party partners"; Ampush and DGS Edu, "and entities to which [they] sold . . . Lead generation data, had been calling every Prospective Student whose information [Connectus] had utilized to conduct a Ping/Search on [Ampush and DGS Edu's] portal, regardless of whether the Lead had ultimately been submitted or sold to [Ampush or DGS Edu]"; and Ampush and DGS Edu, along with the entities to which they sold the lead generation data, "have called as many as 838,853 Prospective Students after improperly obtaining [Connectus's] proprietary Lead generation data . . . ." (Id. at ¶¶ 27-29).

While Ampush and DGS Edu paid Connectus for "approximately 39,975" leads, they did not pay Connectus for any of the 838,853 leads alleged to have been misappropriated. (Id. at ¶ 31). Furthermore, Connectus values each lead as being worth between $18 and $24 and calculates its damages as "exceed[ing] $19,000,000.00, without taking into account the damage to [its] reputation and goodwill." (Id.).

Connectus instituted this action against Ampush on December 3, 2015, (Doc. # 1), and shortly thereafter amended its Complaint to include DGS Edu (Doc. # 9). Ampush filed its Answer on January 29, 2016, and DGS Edu, after having its motion to dismiss denied, filed its Answer on March 11, 2016. (Doc. ## 30, 36, 45, 46). With leave of Court, Connectus filed its Second Amended Complaint on November 11, 2016. (Doc. ## 105, 106). The Second Amended Complaint brings claims for conversion (Count I), misappropriation of trade secrets (Count II), unfair competition (Count III), unjust enrichment (Count IV), breach of contract (Count V), and injunctive relief (Count VI) against both Ampush and DGS Edu. (Doc. # 106). Ampush and DGS Edu filed their respective Amended Answers on November 22, 2016. (Doc. ## 112, 113).

Also on November 22, 2016, DGS Edu filed the pending Motion. (Doc. # 114). Ampush joined in DGS Edu's Motion, but

asserted additional substantive arguments in support. (Doc. # 115). Connectus responded to the Motion and Joinder (Doc. ## 164, 166), and Defendants replied. (Doc. ## 178, 181).

Connectus also filed its Conditional Motion to Amend, seeking leave to amend its trade-secrets claim (switching it from one based on Florida law to one based on California law) in the event the Court determines that California law governs. (Doc. # 167). The Defendants responded in opposition. (Doc. # 177). As such, the Rule 12(c) Motion, the Joinder, and the Conditional Motion to Amend are ripe for review.

## II.   Standards

### A.   Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Federal district courts have applied a 'fairly restrictive standard in ruling on motions for judgment on the pleadings.'" ThunderWave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1564 (S.D. Fla. 1997) (quoting Bryan Ashley Int'l, Inc. v. Shelby Williams Indus., Inc., 932 F. Supp. 290, 291 (S.D. Fla. 1996)). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301

(11th Cir. 2001); see also Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) ("Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.").

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc., No. 8:13-cv-2240-T-33MAP, 2015 WL 518852, at *1 (M.D. Fla. Feb. 9, 2015) (citations omitted); ThunderWave, 954 F. Supp. at 1564 ("The standard of review for Rule 12(b)(6) and Rule 12(c) motions are identical.") (citations omitted). "In determining whether a party is entitled to judgment on the pleadings, [a court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [the court] view[s] those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014); see also Dozier v. Prof'l Found. for Health Care, Inc., 944 F.2d 814, 816 n.3 (11th Cir. 1991) ("A motion for judgment on the pleadings 'admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts.'"). "A complaint may only be dismissed

under Rule 12(c) if 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'" Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, Ga., 831 F.3d 1342, 1345 (11th Cir. 2016).

"If, on a motion under . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "'The court has a broad discretion when deciding whether to treat a motion [for judgment on the pleadings] as a motion for summary judgment even though supplementary materials are filed by the parties and the court is not required to take cognizance of them.'" StoneEagle Servs., 2015 WL 518852, at *2 (citations omitted). The Court exercises its broad discretion and excludes matters outside of the pleadings, but it will consider documents attached to the Second Amended Complaint, Bank of Camilla v. St. Paul Mercury Ins. Co., 531 Fed. Appx. 993, 994 (11th Cir. 2013) (holding that a court may consider documents attached to the pleadings without converting the motion if the documents are central to the claim and undisputed (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

**B.**   <u>**Rules 15 and 16**</u>

"The grant or denial of an opportunity to amend is within the discretion of the district court." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). But, "a motion to amend filed after the deadline established by the Case Management and Scheduling Order, as in this case, will only be granted upon a showing of good cause under Rule 16(b)(4)." <u>Hess v. Coca-Cola Refreshments USA, Inc.</u>, No. 8:13-cv-3136-T33EAJ, 2014 WL 5080258, at *2 (M.D. Fla. Sept. 29, 2014). An untimely motion to amend a pleading is distinctly disfavored under the Local Rules of this District. <u>See</u> M.D. Fla. L.R. 3.05(c)(2)(E). In order "[t]o show good cause, a party must establish that, despite its diligence, the deadline could not be met." <u>Id.</u> (citation omitted).

"Once good cause is shown, the court may consider whether leave should be granted under Rule 15." <u>Thorn v. Blue Cross & Blue Shield of Fla., Inc.</u>, 192 F.R.D. 308, 309-10 (M.D. Fla. 2000). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . ., undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, . . . the leave sought should, as the rules require, be freely given." <u>Foman</u>, 371 U.S. at 182.

11

III. **Analysis**

    A.    **Choice of Law**

        1.    **Waiver**

Connectus argues that Defendants waived any argument or attempt to enforce the choice-of-law provision because Defendants waited too long to file the Rule 12(c) Motion and Joinder. Under the Court's Case Management and Scheduling Order, the parties had until December 13, 2016, to file Rule 12(c) motions. (Doc. # 40 at 2). That deadline was subsequently extended to December 20, 2016. (Doc. # 134). The instant Rule 12(c) Motion and Joinder were filed well before the expiration of even the original deadline. (Doc. ## 114, 115) (filed on November 22, 2016). It should also be noted that Defendants had filed a Rule 12(c) motion in early November of 2016, (Doc. ## 98, 103), but that motion was denied without prejudice in light of the fact that Connectus was granted leave to dismiss certain Counts from its Amended Complaint and to file its Second Amended Complaint (Doc. # 107).

Furthermore, DGS Edu and Ampush have consistently pled, as an affirmative defense, that Connectus's claims based on Florida law should be dismissed because of the agreement's choice-of-law provision. (Doc. ## 30 at 23-24; 46 at 32; 112

at 21; 113 at 22). Thus, the record reflects that Defendants have, from their initial pleadings, placed Connectus on notice that they intended to argue the choice-of-law provision precluded claims based on Florida law. The record also demonstrates that the Rule 12(c) Motion and Joinder are timely and that they were filed early enough so as not to delay trial, which is still several months away. The Court will, therefore, not deem Defendants' choice-of-law arguments waived.

### 2.    Propriety of Ampush's Joinder

Connectus argues that Ampush's Joinder is inappropriate because it raises additional substantive arguments and violates the Local Rules by exceeding the page limitation via its incorporation of DGS Edu's Motion. Although Ampush essentially filed its own motion rather than a mere notice of joinder, the deadline for filing Rule 12(c) motions had not passed when Ampush filed its Joinder. In addition, Connectus responded to the substance of Ampush's additional arguments and thus was not prejudiced. The Court therefore declines to strike the Joinder. See M.D. Fla. L.R. 1.01(c).

### 3.    The Choice-of-Law Provision

#### a.    What's in a word?

The parties dispute the scope of the agreement's choice-of-law provision, which states: "[t]he interpretation and construction of this Agreement and all matters relating hereto shall be governed by the laws of the State of California. . . ." (Doc. # 106, Ex. A at ¶ 6). Defendants argue the plain language of the choice-of-law provision covers this action because "Connectus' claims all arise out of the call center services provided by Connectus to Ampush, and the business relationship of the parties acting pursuant to that agreement . . . ." (Doc. # 114 at 11). Connectus retorts that the phrase "relating hereto" refers only to the interpretation and construction of the agreement, rather than the agreement as a whole, and thus, while California law governs the interpretation and construction of the agreement, it does not dictate the substantive law under which claims may be brought.

Connectus's argument that "hereto" derives its meaning from the antecedent noun phrase "interpretation and construction of this Agreement" ignores the word's plain meaning. As to the plain meaning of "hereto," that word means "[t]o this document." *Hereto*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Hereto*, BLACK'S LAW DICTIONARY (8th ed. 2004) (same); <u>see</u>

<u>also</u> WEBSTER'S NEW COLLEGIATE DICTIONARY 536 (Henry Bosley Woolf et al. eds. 1977) ("to this writing or document").

The Court recognizes some dictionaries define "hereto" in a manner suggesting that the word's definition may be dependent on or refer back to an antecedent noun. <u>See, e.g.,</u> OFFICE EDITION, WEBSTER'S II NEW RIVERSIDE DICTIONARY 324 (rev. ed. Houghton Mifflin Co. 1996) ("To this document, matter or proposition"); THE RANDOM HOUSE COLLEGE DICTIONARY 619 (Stuart B. Flexner et al. eds., rev. ed. 1982) ("to this matter, document, subject, etc."). But, the context in which "hereto" is used in the agreement, along with cannons of construction, preclude such dependence in this instance.

The agreement's choice-of-law provision reads, "[t]he interpretation and construction of this Agreement and all matters relating hereto shall be governed by the laws of the State of California. . . ." (Doc. # 106, Ex. A at ¶ 6). As evident from the plain language, the clause "interpretation and construction of this Agreement" is not limited by a modifying adjective. Connectus's definition of "hereto" though treats that clause as if it were limited. In so doing, Connectus's definition of "hereto" renders the word redundant as used in the choice-of-law provision. A court, however, should not adopt an interpretation that renders a word or

15

clause useless. Golden Door Jewelry Creations, Inc. v. Lloyds
Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1338 (11th Cir.
1997); Crews v. State, 183 So. 3d 329, 335 (Fla. 2015); ACL
Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co., 22 Cal.
Rptr. 2d 206, 214 (Cal. 4th Dist. Ct. App. 1993).

Moreover, the very spectrum of choice-of-law provisions
drawn by Connectus—ranging from those that are construed
narrowly to those that are construed broadly—undercuts
Connectus's argument as to the meaning of "hereto" in the
agreement. As Connectus points out, the Eleventh Circuit
differentiates between a clause that addresses merely the
interpretation of a contract and as such does not encompass
related tort claims (e.g., "[t]his release shall be governed
and construed in accordance with the laws of the State of
[X]") and a clause that encompasses everything related to or
connected with a contract (e.g., "all disputes arising out of
or in connection with the agreement shall be construed with
and shall be governed by the Dutch law"). Cooper v. Meridian
Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009) (internal
quotation marks omitted).

Using Cooper as a guidepost, the Court finds that the
agreement's choice-of-law provision should be interpreted
broadly. The first clause of the choice-of-law provision—

"[t]he interpretation and construction of this Agreement"—
governs just the agreement. For its part, the second clause—
"all matters relating hereto"—reaches beyond the agreement
and captures everything else related to the document, i.e.,
related tort claims. That the agreement uses the word
"matters" rather than "dispute" does not preclude the
provision from being interpreted broadly because the term
"matter" encompasses "dispute." Compare *Matter*, BLACK'S LAW
DICTIONARY (10th ed. 2014) ("A subject under consideration,
esp. involving a dispute or litigation; CASE)," with *Dispute*,
BLACK'S LAW DICTIONARY (10th ed. 2014) ("A conflict or
controversy, esp. one that has given rise to a particular
lawsuit."). As such, the provision at issue here is more
analogous to the provision at issue in Cooper, 575 F.3d at
1162.

### b.   **Related: a fairly direct result**

Connectus goes on to argue that, even if the choice-of-
law provision encompasses all matters relating to the
agreement, its trade-secrets claim would not relate to the
agreement. The Court disagrees.

> A claim "relates to" a contract when "the dispute
> occurs as a fairly direct result of the performance
> of contractual duties." . . . Moreover, the fact
> that a dispute could not have arisen but for an
> agreement does not mean that the dispute

17

necessarily "relates to" that agreement. . . . The phrase "'related to' marks a boundary indicating some direct relationship." . . . Requiring a direct relationship between the claim and the contract is necessary because, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere."

Bailey v. ERG Enters., LP, 705 F.3d 1311, 1317-18 (11th Cir. 2013) (internal citations omitted).

In this case, the agreement formed the basis of the parties' relationship, governed the sale and use of leads generated by Connectus, and set forth a detailed framework for the parties to follow in the course of their transactions. In light of the facts as alleged in the Second Amended Complaint, which the Court must accept as true, the trade-secrets claim relates to, i.e., is a fairly direct result of, the alleged (non)performance of duties imposed by the agreement. As such, California law governs the interpretation of and claims related to the agreement. Because California law governs, Connectus's trade-secrets claim brought under Florida law is dismissed.

### c.   Pled in the alternative

Connectus further argues it should be allowed to plead its Florida trade-secrets claim in the alternative. But, this argument is equally unpersuasive. While Rule 8(d) does allow

a party to plead in the alternative, even if the Court were to construe the claim as being pled in the alternative, the trade-secrets claim based on Florida law would still be dismissed. Contrary to Connectus's argument, even if Defendants show the agreement did not preclude their alleged appropriation and use of scrapped lead data, the Florida trade-secrets claim would still arise as a fairly direct result of the agreement. Thus, the choice-of-law provision would control and preclude the Florida trade-secrets claim.

**B.  Common-Law Claims**

Counts I, III, and IV, which are common-law claims, do not specify whether they are brought under the common law of California or Florida. However, given that California law governs per the parties' choice-of-law provision, in the event the common-law claims are brought under Florida common law, they are dismissed. The common-law claims are also dismissed to the extent they are brought under California common law for the reasons discussed more fully below.

"It is well established under California law that [the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426,

et seq.,] preempts[2] state law claims that are '"based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."'" TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC, No. CV 15-07595-AB(EX), 2016 WL 3475322, at *6 (C.D. Cal. Jan. 29, 2016) (quoting K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009)); see also Gems v. Diamond Imports, Inc., No. 15-cv-3531-MMC, 2016 WL 6902804, at *2 (N.D. Cal. Nov. 22, 2016) ("all 'common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief' are displaced.") (citation omitted). "If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA preempts the other claim.'" Gabriel Techs. Corp. v. Qualcomm Inc., No. 08cv1992-MMA(POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009) (citation omitted). "[T]he only remedies that CUTSA 'does not affect' are '(1) contractual remedies . . ., (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3)

---

[2] Although California's Supreme Court uses "displace" rather than "preempt," Zengen, Inc. v. Comerica Bank, 158 P.3d 800, 804 n.5 (Cal. 2007), the Court will use "preempt."

criminal remedies . . . .'" <u>Gems</u>, 2016 WL 6902804, at *2 (quoting Cal. Civ. Code § 3426.7(b)) (emphasis in original).

Connectus argues it is premature to decide whether the common-law claims are preempted because the Court must first determine if the information at issue constitutes a trade secret. However, courts have rejected similar arguments. <u>See, e.g.</u>, <u>Gabriel Techs.</u>, 2009 WL 3326631, at *11 (rejecting assertion that whether information is a trade secret must be determined before addressing issue of preemption on the grounds that the "majority of cases hold that determining whether allegedly misappropriated information constitutes a trade secret is irrelevant for preemption purposes because CUTSA preempts all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret"); <u>see also</u> <u>Artec Grp., Inc. v. Klimov</u>, No. 15-cv-3449-EMC, 2016 WL 7157635, at *7 (N.D. Cal. Dec. 8, 2016) ("'The majority of district courts that have considered <i>Silvaco</i> have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA.'") (citation omitted); <u>Total Recall Techs. v. Luckey</u>, No. C 15-02281 WHA, 2016 WL 199796, at *7-8 (N.D. Cal. Jan. 16, 2016);

AirDefense, Inc. v. AirTight Networks, Inc., No. C 05-4615JF, 2006 WL 2092053, at *3 (N.D. Cal. July 26, 2006).

Even a perfunctory reading of the Second Amended Complaint reveals that Connectus's common-law claims share and derive from the same nexus of facts as the trade-secrets claim. Connectus states, "Plaintiff brings this action based upon the Defendants' systematic practice of misappropriating and converting Plaintiff's proprietary lead generation data and exploiting the misappropriated proprietary lead generation data by mass calling Plaintiff's customers and . . . selling the misappropriated data to third parties who mass call Plaintiff's customers." (Doc. # 106 at ¶ 1). Connectus then lays out its factual allegations in paragraphs 12 through 25 of the Second Amended Complaint. Notably, Counts I (common law), II (statutory trade secrets), III (common law), and IV (common law), all share the same factual basis. (Id. at ¶¶ 33, 42, 48, 56). Thus, on the basis of Gabriel Technologies, 2009 WL 3326631, at *11-12, and the other cases cited above, Connectus's common-law claims, to the extent they were brought under California common law, are preempted and dismissed. Because the Court has found the common-law claims to be preempted, it need not address Ampush's argument

that the common-law claims are barred by the economic loss rule.

### C.   **Limitation-of-Liability Clause**

The parties' agreement contains a paragraph addressing liability, which states:

> IN NO EVENT SHALL EITHER VENDOR OR AMPUSH BE LIABLE FOR ANY LOST PROFITS, LOST REVENUES OR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT, EVEN IF SUCH DAMAGES ARE FORESEEABLE AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL EITHER PARTY'S LIABILITY HEREUNDER EXCEED THE PAYMENTS MADE BY AMPUSH TO VENDOR IN THE TWELVE (12) MONTHS PRECEEDING THE EVENT GIVING RISE TO THE CLAIM.

(Doc. # 106, Ex. A at ¶ 13). Ampush argues that, with respect to the breach-of-contract claim, any damages awarded must be limited in accordance with the agreement's limitation-of-liability clause. For its part, Connectus argues that the agreement's limitation-of-liability clause contravenes Section 1668, Cal. Civ. Code, and is contrary to an equitable interpretation of the clause because it removes Defendants' duty to adhere to a minimal standard of care.

"California contract law establishes that 'the fundamental goal of contractual interpretation is to give effect to the mutual intentions of the parties.'" Nat'l Rural Telecommns. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1040,

1046 (C.D. Cal. 2003) (citation omitted). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.

"Under California law, parties may agree by their contract to the limitation of their liability in the event of a breach." Nat'l Rural Telecomms. Coop., 319 F. Supp. 2d at 1048; see also Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 147 Cal. Reptr. 3d 634, 641-42 (Cal. 2d Dist. App. Ct. 2012) ("Clauses of this type 'have long been recognized as valid in California.'") (citation omitted). However, a limitation-of-liability clause is unenforceable if it is "unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy," or is asserted against a claim for fraud or misrepresentation. Id. at 642; see also Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of the law, whether willful or negligent, are against the policy of the law.").

Connectus's breach-of-contract claim (Count V) does not allege a willful breach of contract. (Doc. # 106 at ¶¶ 62-

64); cf. (Id. at ¶¶ 46, 53, 59) (alleging willful conduct for Counts II-IV). As such, Section 1668, Cal. Civ. Code, does not bar enforcement of the agreement's limitation-of-liability clause. Furthermore, Connectus has made no showing that the limitation-of-liability clause is otherwise unconscionable, i.e., the result of an unequal bargaining position.

Connectus's additional arguments also fail to persuade. Connectus argues the limitation-of-liability clause removes Defendants' duty to adhere to a minimal standard of care. But this argument is unpersuasive since the plain language of the clause allows for direct damages, albeit capped at the sum equal to the payments made by Ampush to Connectus in the 12 months preceding the event giving rise to the claim. In addition, Connectus's attempt to defeat dismissal by arguing its unfair competition claim is based on violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, relies on allegations not pled in the Second Amended Complaint. (Doc. # 106). As such, and because the Court has exercised its broad discretion not to go beyond the pleadings, the Court declines to entertain that argument at this stage. Therefore, the limitation-of-liability clause found in the parties' agreement is enforceable with respect to Count V.

D.   **Injunctive Relief**

Count VI of the Second Amended Complaint asserts a claim for injunctive relief. (Doc. # 106 at ¶¶ 65-70). However, as Ampush correctly notes by way of citation, "[a]n injunction is a remedy, not a separate claim or cause of action. A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate." Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010). Accordingly, Count VI is dismissed.

Nevertheless, the Court will permit Connectus to seek injunctive relief as a remedy in connection to its breach-of-contract claim. The wherefore clause of Count V reads: "Plaintiff . . . respectfully requests that this Court . . . grant Plaintiff all other relief the Court deems appropriate." (Doc. # 106 at 11). While injunctive relief is not explicitly sought in the aforementioned wherefore clause, it is sought by implication through Connectus's use of the catch-all provision "all other relief." In addition, the Defendants were on notice from the beginning of this suit that Connectus would be seeking injunctive relief. See (Doc. # 9 at 14-15). Thus, the basic tenant of Rule 8—notice—has

26

been met and Connectus may seek injunctive relief with respect to Count V.

**E.**   **Amendment**

Connectus moves for leave to file a third amended complaint should the Court find that California law governs the parties' agreement so that Connectus may replead its Florida trade-secrets claim under California law. (Doc. # 167). Defendants oppose Connectus's Conditional Motion to Amend. (Doc. # 177).

According to Connectus, it pled its trade-secrets claim under Florida law on the good-faith belief that such a claim was governed by Florida, rather than California, law. (Doc. # 167 at 1). Connectus also argues that a ruling from this Court as to which law governs would constitute good cause for amending the Case Management and Scheduling Order's deadline for amending pleadings.

Lacking from Connectus's Conditional Motion to Amend, however, is a discussion regarding why it did not plead the CUTSA claim in the alternative. Indeed, the best practice in light of the circumstances would have been for Connectus to plead its trade-secrets claim under both Florida and California law, for doing so would have precluded the situation in which Connectus now finds itself.

Nevertheless, and in spite of Connectus's less than ideal pleading practices, prohibiting Connectus from repleading its trade-secrets claim would produce too draconian of a result. In addition, the Court accepts Connectus's representation as to its good-faith belief and agrees that the Court's ruling constitutes good cause because it was issued after the deadline for amending pleadings passed, see Perea v. Avnet, Inc., No. 12-cv-80257-RYSKAMP/HOPKINS, 2012 WL 12868748, at *2 (S.D. Fla. Sept. 14, 2012) (finding Rule 16(b)(4)'s good-cause standard satisfied where court issued ruling on "a complex interpretation of contract law and the employment agreement's choice-of-law provision" after the deadline for amending pleadings had passed). As such, the Court now turns to whether the standard under Rule 15 is satisfied.

The default position of Rule 15 is that leave to amend should be freely given, except where, for example, amendment would be futile. Foman, 371 U.S. at 182. That futility exception requires the Court to address Ampush's argument that Connectus's CUTSA claim would be barred by the economic loss rule. "Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims. The doctrine precludes recovery for

28

purely economic loss due to disappointed expectations, unless the plaintiff can demonstrate harm above and beyond a broken contractual promise." Alvarado Orthopedic Research, L.P. v. Linvatec Corp., No. 11cv246-IEG (RBB), 2012 WL 404775, at *7 (S.D. Cal. Feb. 8, 2012) (citations and internal quotation marks omitted). The purpose of the rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other." Robinson Helicopter Co. v. Dana Corp., 102 P.3d 268, 273 (Cal. 2004) (citation omitted). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law" and "exposes a plaintiff to liability for personal damages independent of the plaintiff's economic loss." Id. (citation omitted).

Relying on WeBoost Media S.R.L. v. LookSmart Ltd., No. C 13-5304 SC, 2014 WL 824297, at *4-5 (N.D. Cal. Feb. 28, 2014), Ampush argues that California's economic loss rule bars a statutory claim that derives from the same facts giving rise to a breach-of-contract claim. To be sure, the court in WeBoost dismissed a statutory claim for unfair competition as being barred by the economic loss rule. Id. However, the WeBoost court does not address the specific argument raised by Connectus: whether a statutory claim may be barred by a

29

judicially created doctrine such as the economic loss rule.

And, while one case cited by Connectus is more persuasive in that it provides a thorough discussion of the exact issue with which the Court is currently faced, the case is not interpreting California law. (Doc. # 166 at 11) (citing New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 909 (M.D. Fla. 2007)). Given the incomplete briefing and the paucity of case law, both as cited by the parties and found by the Court's independent research, it is far from certain the California Supreme Court would hold that a claim under CUTSA would be barred by the economic loss rule. Therefore, amendment is not futile and the Court sees no reason to depart from Rule 15's freely-given standard.

Connectus may file a third amended complaint by January 30, 2017. In the third amended complaint, Connectus may replead its statutory trade-secrets claim under California law. Connectus should also omit its common-law claims and stand-alone claim for injunctive relief from the third amended complaint as they have been dismissed. In addition, Connectus may amend its breach-of-contract claim in order to plead injunctive relief as a requested remedy. Connectus may not otherwise alter its factual allegations or theories of liability.

Because the Court has granted Connectus leave to file a third amended complaint, and has disposed of several counts, Defendants' pending motions for summary judgment (Doc. ## 161, 168) are denied without prejudice. Defendants shall respond to the third amended complaint by February 13, 2017. In addition, in light of the fact that the Court has granted Connectus leave to amend, the Court will allow the Defendants to file amended motions for summary judgment, addressing only those issues that remain; Defendants are free to raise the issue of whether CUTSA is barred by the economic loss rule again, but are cautioned any such briefing will need to address the concerns addressed by the Court in this Order. The parties are directed to file a joint briefing schedule for summary judgment by January 25, 2017. If the parties determine refiling their pending motions to strike or exclude expert testimony, which the Court has construed as Daubert motions, would be in the interests of judicial economy, they should indicate as much in their joint briefing schedule.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant DGS Edu, LLC's Motion for Judgment on the Pleadings (Doc. # 114) is **GRANTED.** The plain language of the parties' choice-of-law provision controls and, as

such, California law governs. Accordingly, Count II, which is based on Florida law, is **DISMISSED**. Counts I, III, and IV are brought under preempted causes of action and therefore are **DISMISSED**.

(2) Defendant Ampush Media, Inc.'s Notice of Joinder in Defendant DGS Edu, LLC's Motion for Judgment on the Pleadings, which the Court construes as a Rule 12(c) motion, (Doc. # 115) is **GRANTED** to the extent that any damages awarded shall be limited according to paragraph 13 of the parties' agreement, i.e., the limitation-of-liability clause. Furthermore, Count VI is dismissed insofar as it seeks to assert a stand-alone claim to injunctive relief; however, Connectus may seek injunctive relief as a remedy to its breach-of-contract claim.

(3) Plaintiff Connectus LLC's Conditional Motion to Amend Complaint (Doc. # 167) is **GRANTED**. Connectus may file a third amended complaint, which conforms to the limitations addressed herein, by **January 30, 2017**.

(4) Defendants' pending motions for summary judgment (Doc. ## 161, 168) are **DENIED WITHOUT PREJUDICE**.

(5) Defendants shall respond to the third amended complaint by **February 13, 2017**.

(6)   The parties are directed to file a joint briefing schedule for summary judgment by **January 25, 2017**. If the parties determine refiling their pending motions to strike or exclude expert testimony, which the Court has construed as <u>Daubert</u> motions, would be in the interests of judicial economy, they should indicate as much in their joint briefing schedule and the Court will then decide whether the pending <u>Daubert</u> motions should also be denied without prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>20th</u> day of January, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE