UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNECTUS LLC,

    Plaintiff,

v.                                                                    Case No: 8:15-cv-2778-T-33JSS

AMPUSH MEDIA, INC. and DGS EDU, LLC,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on the following six motions: Plaintiff's Motion to Compel Responses to Written Discovery from Defendant DGS EDU, LLC ("DGS") (Dkt. 126) ("First Motion"), and DGS's response in opposition (Dkt. 146); Plaintiff's Motion to Compel Responses to Plaintiff's Fourth Set of Requests for Admissions to Defendant Ampush Media, Inc. ("Ampush") (Dkt. 127) ("Second Motion"), and Ampush's response in opposition (Dkt. 131); DGS's Motion to Compel Responses to Interrogatories and Document Requests Propounded to Plaintiff (Dkt. 119) ("Third Motion"), and Plaintiff's response in opposition (Dkt. 138); DGS's Motion to Compel Responses to Requests for Admissions and Document Requests Propounded to Plaintiff (Dkt. 128) ("Fourth Motion"), and Plaintiff's response in opposition (Dkt. 148); Ampush's Motion to Compel Information and Documents (Dkt. 124) ("Fifth Motion"), and Plaintiff's response in opposition (Dkt. 142); and Defendants' Motion to Strike/Exclude Plaintiff's Untimely Disclosed Witnesses, Subjects, Documents, and Damages Theories in its Rule 26 Initial Disclosures (Dkt. 125) ("Sixth Motion"), and Plaintiff's response in opposition (Dkt. 144).

**BACKGROUND**

Plaintiff operates a website that collects information from prospective students that Plaintiff uses to match the prospects with universities. (Dkt. 106 ¶ 14.) This data, Plaintiff alleges, is "extraordinarily proprietary and highly valued by Universities seeking to acquire Prospective Students." (Dkt. 106 ¶ 14.) Plaintiff refers to prospective students "as well as the proprietary data acquired therefrom" as "Leads." (Dkt. 106 ¶ 14.)

Plaintiff matches prospective students with universities either directly or by using intermediaries who have relationships with universities ("Aggregators"). (Dkt. 106 ¶ 15.) Aggregators maintain databases that contain data about the programs offered by universities and Plaintiff, in determining university matches for prospective students, "'ping[s]' data relating to each Prospective Student against each Aggregator's portal." (Dkt. 106 ¶ 17.) After a match is found, Plaintiff obtains further information from a prospective student and confirms the match. (Dkt. 106 ¶ 18.) Then, Plaintiff sells the Lead to the Aggregator, who in turn sells the Lead to the university. (Dkt. 106 ¶ 18.) Plaintiff alleges that it does not, however, "submit or sell Leads to Aggregators" during the "ping" stage. (Dkt. 106 ¶ 19.)

Ampush is one such Aggregator. (Dkt. 106 ¶ 15.) Plaintiff and Ampush entered into a contract governing Plaintiff's sale of Leads to Ampush ("Agreement"). (Dkt. 106 ¶ 20; Dkt. 106-1.) DGS is Ampush's successor in interest who acquired, among other things, the Agreement. (Dkt. 106 ¶ 21.) Plaintiff alleges that "Defendants had been scraping, digitally copying or otherwise misappropriating Plaintiff's proprietary Lead generation data early in Plaintiff's Lead generation process, at the Ping/Search Stage, but before Plaintiff had submitted or sold the Lead to Defendants." (Dkt. 106 ¶ 25.) Defendants, Plaintiff alleges, then sold the data to third parties.

(Dkt. 106 ¶¶ 27–29.)  Plaintiff contends that these stolen Leads exceed $19 million in value.  (Dkt. 106 ¶ 31.)

Among other affirmative defenses, Defendants raise the defenses that Plaintiff's claims are barred to the extent Plaintiff consented to the alleged actions, the alleged actions are considered an acceptable industry practice, and Plaintiff failed to use reasonable efforts to protect any alleged confidential or proprietary information.  (Dkt. 112 at 21; Dkt. 113 at 22.)

On January 20, 2017, the Court entered an order on Defendants' motion for judgment on the pleadings and Plaintiff's motion to amend the complaint.  (Dkt. 188.)  The Court determined that California law governed the Agreement, and, accordingly, dismissed Count II, Plaintiff's claim for misappropriation of trade secrets under Florida law.  (Dkt. 188 at 18.)  However, the Court granted Plaintiff leave to replead its statutory trade secrets claim under California law.  (Dkt. 18 at 30.)  Next, the Court dismissed Plaintiff's common law claims, Counts I, III, and IV, as preempted by California's Uniform Trade Secrets Act.  (Dkt. 188 at 22–23.)  As to Plaintiff's breach of contract claim, Count V, the Court determined that the Agreement's limitation of liability provision is enforceable.  (Dkt. 188 at 25.)  Finally, the Court dismissed Plaintiff's claim for injunctive relief, Count VI, but permitted Plaintiff to seek injunctive relief as a remedy in connection with its breach of contract claim.  (Dkt. 188 at 26.)  Plaintiff has leave to file a third amended complaint by January 30, 2017, and Defendants' responses are due by February 13, 2017.  (Dkt. 188 at 30–31.)

## DISCUSSION

A lengthy hearing on the motions was held before the undersigned on January 24, 2017.  As reflected in the Court's oral rulings at the hearing, the great majority of the discovery requests at issue seek information irrelevant to the parties' claims and defenses, especially in light of

Plaintiff having leave to replead only two causes of action (Dkt. 188).  Fed. R. Civ. P. 26(b)(1). Further, many of the requests at issue are overly broad.  Thus, to permit the discovery would not be proportional to the needs of the case when considering the burden in responding to the discovery in comparison to its likely benefit and importance in resolving the case's issues.  *Id.*  Also, in several instances, the party responding to discovery requests represented to the Court, as in discovery responses, that, after a diligent search, no responsive documents were located.

Accordingly, and for the reasons stated at the hearing, it is

**ORDERED**:

1. The First Motion (Dkt. 126) is **GRANTED** in part and **DENIED** in part.  The First Motion is granted as to Interrogatory 6 (Set 2), and Requests for Admissions 13 through 19 and 22.  DGS shall supplement its responses by February 7, 2017.  The First Motion is denied as to Interrogatory 5 (Set 2), Request for Production 45 (Set 3), and Requests for Admissions 20, 21, 23 through 28, 30, 32, 34, 36, 38, 40, and 42.

2. The Second Motion (Dkt. 127) is **DENIED**.

3. The Third Motion (Dkt. 119) is **GRANTED** in part and **DENIED** in part.  At the hearing, DGS withdrew the Third Motion as to Interrogatories 3 and 24 and Request for Production 9.  The Third Motion is granted as to Requests for Production 15 and 20.  Plaintiff shall supplement its responses by February 7, 2017.  The Third Motion is denied as to Interrogatories 2, 5, 8, 11, 12, 15 through 17, and 20 through 22, and Requests for Production 11, 14, 16, 19, and 21.

4. The Fourth Motion (Dkt. 128) is **GRANTED** in part and **DENIED** in part.  At the hearing, DGS withdrew the Fourth Motion as to its First Amended Set of Requests for Admissions 1 and 2, and its Second Set of Requests for Production 2, 4, and 4[6].  The Fourth Motion is granted as to DGS's First Amended Set of Requests for Admissions 6, 9, and 10, and DGS's Second Set

of Requests for Admissions 4 and 5.  Plaintiff shall supplement its responses by February 7, 2017.

The Fourth Motion is denied as to DGS's Second Set of Requests for Production 1, 3, 3[5], 5[7], 6[8], 7[9], 8[10], 9[11], 10[12], 11[13], 12[14], 13[15], and 14[16], and DGS's Third Set of Requests for Production 1 through 13; however, Plaintiff shall serve an updated privilege log on DGS by February 7, 2017.

       5.       The Fifth Motion (Dkt. 124) is **GRANTED** in part and **DENIED** in part.  At the hearing, Ampush withdrew the Fifth Motion as to Requests for Production 26, 27, 57, and 58.  The Fifth Motion is granted as to Requests for Admission 14 through 16 and Requests for Production 18 through 20, 33 through 35, 56, and 65.  The Fifth Motion is granted as to Request for Production 31 to the extent Plaintiff shall produce documentation showing its profits for the years of the Agreement (Dkt. 106-1), but is denied in all other respects.  By February 14, 2017, Plaintiff shall supplement its responses, including indicating to which requests responsive documents have already been produced, serve a privilege log on Ampush, and produce to Ampush's counsel the production Plaintiff produced to Ampush's previous counsel.  The Fifth Motion is denied as to Requests for Production 17, 28, 30, 32, 45, and 51 through 53.

       6.       The Sixth Motion (Dkt. 125) is **DENIED**; however, to ameliorate any prejudice to Defendants, the Court reopens discovery for the limited purpose of allowing Defendants to conduct the depositions of Naomi Barbeau, Executive Vice President, Call Center Operations, Digital Media Solutions, LLC, and the following newly-disclosed witnesses: the corporate representatives for Neutron Interactive, BirdDog Media, Inc., Silverback Learning Solutions, AC Media Inc., College Bound Media, Ifficient Media, and Nobel Voice LLC.  Defendants' depositions must be

completed by February 28, 2017.

**DONE** and **ORDERED** in Tampa, Florida on January 27, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record