UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNECTUS LLC,

       Plaintiff,

v.                         Case No. 8:15-cv-2778-T-33JSS

AMPUSH MEDIA, INC., et al.,

       Defendants.
_____/

## ORDER

This matter comes before the Court in consideration of Defendants Ampush Media, Inc. and DGS Edu, LLC's Joint Motion to Partially Strike/Dismiss Plaintiff's Third Amended Complaint (Doc. # 206), filed on February 9, 2017, and Defendants' Joint Motion to Strike Jury Demand (Doc. # 214), filed on February 23, 2017. Plaintiff Connectus LLC filed responses in opposition on February 23, 2017, and March 9, 2017, respectively. (Doc. ## 213, 219). For the reasons below, both Motions are denied.

## I.  Background

A detailed recounting of this action's history is not needed to dispose of the instant Motions. Suffice it to say, Connectus's Second Amended Complaint brought claims for conversion, misappropriation of trade secrets under Florida

law, unfair competition, unjust enrichment, breach of contract, and injunctive relief. (Doc. # 106). The claim for misappropriation of trade secrets under Florida law sought, among other things, injunctive relief. (Id. at 9). And, as with the earlier versions, Connectus's Second Amended Complaint included a demand for a jury trial. (Id. at 13).

Thereafter, DGS Edu and Ampush filed Rule 12(c) motions. (Doc. ## 114, 115). After being fully briefed, the Court made the following relevant rulings: (1) California law governed in accordance with the parties' agreement; (2) Connectus's common-law claims for conversion, unfair competition, and unjust enrichment were dismissed as preempted; (3) Connectus's stand-alone claim for injunctive relief was improper under California law; and (4) Connectus could file a third amended complaint that pled the trade-secrets claim under California law and could amend its breach-of-contract claim to include a claim for injunctive relief. (Doc. # 188 at 31-32).

Connectus timely filed its Third Amended Complaint. (Doc. # 200). The Third Amended Complaint asserts only two claims; namely, a claim under California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(d), (CUTSA) and a claim for breach of contract. (Id.). As with the Second Amended

2

Complaint, Connectus's trade-secrets claim seeks injunctive relief. (Id. at 8). The Third Amended Complaint also contains a demand for a jury trial. (Id. at 10).

Attached to the Third Amended Complaint is the parties' agreement. (Doc. # 200-1). Paragraph 6 of that agreement reads:

> **GOVERNING LAW & ATTORNEYS' FEES**
>
> The interpretation and construction of this Agreement and **all matters relating hereto shall be governed by the laws of** the State of **California**. The parties hereby submit to the jurisdiction of, and waive any venue objections against, the United States District Court for the Northern District of California, San Francisco County Branch and the Superior and Municipal Courts of the State of California. **Each of the parties agrees that it shall not seek a jury trial in any proceeding based upon or arising out of or otherwise related to this Agreement** or any of the other documents and instruments contemplated hereby **and each of the parties hereto waives any and all right to such jury trial. AMPUSH and** VENDOR[, i.e., **Connectus**,] **acknowledge that the foregoing waiver is knowing and voluntary.** The prevailing party shall be awarded its reasonable attorneys' fees and costs in any lawsuit arising out of or related to this Agreement.

(Id. at ¶ 6) (emphasis added).

DGS Edu and Ampush now seek to strike or dismiss portions of the Third Amended Complaint. In particular, Defendants seek to (1) strike paragraphs 39-42 and 46-49 of the Third Amended Complaint for putatively violating the Court's

previous Order; (2) as an alternative to the first request, dismiss paragraphs 39-42 and 46-49 of the Third Amended Complaint; (3) dismiss the CUTSA claim; and (4) strike Connectus's jury demand. Connectus responded in opposition.

## II.  Standard

### A.   Rule 12(f)

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act sua sponte or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Id. "Motions to strike are considered 'drastic' and are disfavored by the courts." Gyenis v. Scottsdale Ins. Co., No. 8:12-cv-805-T-33AEP, 2013 WL 3013618, at *1 (M.D. Fla. June 14, 2013) (quoting Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)).

### B.   Rule 12(b)(6)

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

### C. <u>Jury Trial: Right and Waiver, in General</u>

"The Seventh Amendment provides '[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.'" <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 564 (1990) (quoting U.S. Const. amend. VII). A party may waive its right to a jury trial if the waiver is knowing and voluntary. <u>Bakrac, Inc. v. Villager Franchise Sys., Inc.</u>, 164 Fed. Appx. 820, 823 (11th Cir. 2006). However, because of

5

the historical importance of this right, "any seeming curtailment . . . should be scrutinized with the utmost care." Chauffers, 494 U.S. at 565 (internal citations omitted). Furthermore, "because the right to a jury trial is fundamental, courts must indulge every reasonable presumption against waiver." Burns v. Lawther, 53 F.3d 1237, 40 (11th Cir. 1995) (per curiam) (internal quotations omitted).

**III. Analysis**

    **A.  Compliance with the Court's Order**

Defendants argue that paragraphs 39-42 and 46-49 of the Third Amended Complaint should be stricken for failure to comply with the Court's January 20, 2017, Order. Connectus contends its Third Amended Complaint fully complies with the Court's Order.

In pertinent part, the Second Amended Complaint brought a claim for misappropriation of trade secrets under Florida law that sought injunctive relief. (Doc. # 106 at 8-9). The Second Amended Complaint also brought a stand-alone claim for injunctive relief. (Id. at 11-13). Defendants moved for judgment on the pleadings; in particular, DGS Edu sought to have the trade-secrets claim dismissed for being improperly brought under Florida law (Doc. # 114 at 21) and Ampush sought to have the stand-alone claim for injunctive relief dismissed

6

(Doc. # 115 at 12-13). The Court agreed the trade-secrets claim was improperly brought under Florida law, but it also granted Connectus leave to replead the claim under California law. (Doc. # 188 at 30). Further, while the Court agreed the claim for injunctive relief could not stand alone, the Court granted Connectus leave to include such a claim to relief in its breach-of-contract claim. (Id.).

A review of the Third Amended Complaint shows that Connectus merely transferred its allegations from the stand-alone claim for injunctive relief as pled in the Second Amended Complaint into the claims for misappropriation of trade secrets and breach of contract as pled in the Third Amended Complaint. Compare (Doc. # 106 at ¶¶ 66-69), with (Doc. # 200 at ¶¶ 39-42, 46-49). The trade-secrets claim as pled in the Second Amended Complaint explicitly sought injunctive relief and Defendants were on notice from the beginning of this action that Connectus would be seeking injunctive relief, as well as the grounds for that relief. (Doc. # 188 at 26-27). In light of the various iterations of the complaint and the Court's January 20, 2017, Order, the Court finds that the Third Amended Complaint complies with the Court's directive. Accordingly, the Court declines to

strike paragraphs 39-42 and 46-49 of the Third Amended
Complaint.

###   B.   Round 1: Standing and Injunctive Relief

Defendants challenge this Court's subject-matter
jurisdiction. (Doc. # 206 at 3-4). They argue, "[b]ecause
Connectus has not actually pled that it has standing to seek
injunctive relief on behalf of alleged 'customers whose Lead
generation data has been misappropriated by Defendants,' it
has facially failed to establish standing." (Id. at 4).

A federal court's subject-matter jurisdiction may be
challenged at any time. Ingram v. CSX Transp., Inc., 146 F.3d
858, 861 (11th Cir. 1998). Indeed, courts themselves retain
an independent duty to ensure the exercise of jurisdiction is
proper. Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68
F.3d 409, 414 (11th Cir. 1995). The Court previously found
jurisdiction under 28 U.S.C. § 1332 existed (Doc. # 209 at
19-23) and it sees no reason why jurisdiction thereunder has
been obviated. Accordingly, the following jurisdictional
analysis focuses only on what Defendants specifically argue
in their pending Motion.

A core aspect of jurisdiction is that the party invoking
a court's jurisdiction must have standing to do so. Spokeo,
Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) ("Standing to

sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed . . . to ensure that federal courts do not exceed their authority . . . [and it] limits the category of litigants empowered to maintain a lawsuit in federal court . . . .") (citation omitted). The "'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). And those three elements are: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted).

The party invoking a court's jurisdiction bears the burden of establishing the propriety of exercising such jurisdiction. Id. (citation omitted). Moreover, "'[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (citation and footnote omitted).

The Third Amended Complaint alleges "Defendants had been scraping, digitally copying or otherwise misappropriating Plaintiff's proprietary Lead generation data early in Plaintiff's Lead generation process, at the Ping/Search Stage, but before Plaintiff had submitted or sold the Lead to

Defendants." (Doc. # 200 at ¶ 25). The Third Amended Complaint goes on to allege that "Defendants have used 'scraping' software or other digital means to mine and misappropriate Plaintiff's proprietary Lead generation data and trade secrets." (Id. at ¶ 26).

Further, Defendants allegedly "sold the misappropriated Lead generation data to several of Defendants' third party partners." (Id. at ¶ 27). Defendants and their third-party partners allegedly called every prospective student whose information had been misappropriated "dozens or scores of times." (Id. at ¶¶ 28, 30). Due to this putative misappropriation, Connectus claims it has been damaged in excess of "$19,000,000.00" and that it "continues to be damaged monetarily and its goodwill continues to be irreparably harmed." (Id. at ¶¶ 31, 32). Consistent with its allegations of continuing harm, Connectus endeavors to obtain an injunction that enjoins Defendants from calling customers identified by the allegedly misappropriated data and that orders Defendants to return such data. (Id. at 8-10).

Defendants argue Connectus does not have standing to seek an injunction on behalf of third parties who might receive telemarketing calls. However, a fair reading of the Third Amended Complaint does not show Connectus seeks to

10

vindicate the rights of third parties. Rather, the allegations in the Third Amended Complaint establish Connectus seeks to obtain an injunction prohibiting Defendants and those acting in concert with them from calling prospective students because calling those students damages Connectus's goodwill. Therefore, Defendants' Motion is denied to the extent it seeks to have the claims for injunctive relief dismissed.

Furthermore, Connectus's "suggest[ion] that the Court's repeated use of the[] terms[ 'scrap data' and 'ancillary data'] effectively adopt[ed] Defendants' evidence-free characterization of this case—and at minimum, resolve[d] a factual issue against Plaintiff without trial[,] [s]ee, e.g., Order at 23-27, ECF No. 209" (Doc. # 213 at 2), is without merit. Neither the Court's Order on the Rule 12(c) motions, nor the Court's order on the Daubert motions used the term "ancillary data." (Doc. ## 188, 209). Moreover, Connectus either forgets or ignores its own pleading. The Third Amended Complaint alleges that Defendants had been "scraping" Connectus's data through the use of "'scraping' software." (Doc. # 200 at ¶¶ 25, 26). Referring to data obtained through the use of "'scraping' software" as scrap or scrapped data is not tantamount to impermissibly resolving a factual question.

C.   __Round 2: Mootness and Limits__

Defendants further assert Connectus's request for injunctive relief should be dismissed because the claims are moot and Connectus "failed to plausibly allege the necessary elements for specific performance as required under California law." (Doc. # 206 at 6). Connectus argues those defenses are barred by Rule 12(g)(2).

Rule 12 permits a party to file a motion rather than serve a responsive pleading. Fed. R. Civ. P. 12(a)(4). As is pertinent to this case, two such motions are Rule 12(b) motions, which allow a party to present certain enumerated defenses, and Rule 12(f) motions, which allow a party to request to have "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" struck from a pleading. While a party may join a motion under Rule 12 with any other motion allowed by Rule 12, Fed. R. Civ. P. 12(g)(1), "[e]xcept as provided . . . ., a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

The two exceptions to Rule 12(g)(2) are listed within Rule 12(h). The first exception is that a party may raise the defenses of "failure to state a claim upon which relief can

12

be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim" in a pleading under Rule 7(a), by motion under Rule 12(c), or at trial. Fed. R. Civ. P. 12(h)(2). The second exception is that subject-matter jurisdiction may be attacked at any time. Fed. R. Civ. P. 12(h)(3); see also Ingram, 146 F.3d at 861.

### 1.   Mootness: a challenge to jurisdiction

A party may seek dismissal of a claim on the theory of mootness under Rule 12(b)(1). See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1308-09 (11th Cir. 2011). "A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." Id. at 1308 (citation and internal quotation marks omitted). If a case or claim becomes moot, it must be dismissed. Id. at 1309. "Generally, the 'party asserting mootness' bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" Id. at 1310 (citation omitted).

Preliminarily, because the mootness arguments raised by Defendants go to the Court's subject-matter jurisdiction, they cannot be waived and are exempted from the general limit imposed by Rule 12(g)(2). Fed. R. Civ. P. 12(h)(3); see also

13

Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1308-09; Ingram, 146 F.3d at 861. With respect to the merits of Defendants' mootness arguments, the Court is not persuaded. Connectus alleged in its Third Amended Complaint that its goodwill continues to be damaged by Defendants' actions. In light of the alleged continuation of damages, there is a controversy for which the Court can provide meaningful relief. Therefore, the claims for injunctive relief are not moot. Of course, whether Connectus ultimately prevails and shows entitlement to an injunction is yet to be determined.

### 2.   Rule 12's limitation

After Connectus filed its Second Amended Complaint, DGS Edu and Ampush each filed a Rule 12(c) motion. (Doc. ## 114, 115). DGS Edu's 12(c) motion did not seek to have the claim for injunctive relief dismissed. (Doc. # 114). And Ampush's Rule 12(c) motion sought to have the claim for injunctive relief dismissed only on the grounds that injunctive relief could not be requested through a stand-alone claim. (Doc. # 115 at 12-13). Defendants could have argued the request for injunctive relief failed to plausibly allege the necessary elements under California law in their Rule 12(c) motions; however, they did not do so.

14

Furthermore, because the amendments giving rise to the Third Amended Complaint were not substantive insofar as the claim to injunctive relief was concerned, the filing of the Third Amended Complaint did not revive Defendants' ability to file a Rule 12(b)(6) motion asserting a defense that was not previously asserted. Ruehling v. Armstrong, No. 8:12-cv-2724-T-35TGW, 2014 WL 12617962, at *2 (M.D. Fla. Nov. 3, 2014) ("a defendant is prohibited from raising defenses in a successive pre-answer motion to dismiss that were available but omitted from a previous motion to dismiss, even where an intervening amended complaint is filed.") (citations omitted). Thus, Rule 12(h)(2) bars the assertion of that argument through a Rule 12(b)(6) motion.

D.    **The CUTSA Claim**

1.    **The economic loss rule**

Although Connectus asserts Defendants waived the ability to seek dismissal under the economic loss rule through a Rule 12(b)(6) motion (Doc. # 213 at 9-10), the Court does not need decide the issue of waiver because the argument is denied on the merits, as explained more fully below.

Defendants rely on WeBoost Media S.R.L. v. LookSmart Ltd., No. C 13-5304 SC, 2014 WL 824297, at *4-5 (N.D. Cal. Feb. 28, 2014), as support for the proposition that California

courts apply the economic loss rule to bar statutory claims. (Doc. # 206 at 10) (stating that the WeBoost "case[] . . . barred a statutory unfair-competition claim pursuant to California's economic loss rule"). However, as cited by Connectus (Doc. # 213 at 15-16), WeBoost Media S.R.L. v. LookSmart Ltd., No. C 13-5304 SC, 2014 WL 2621465, at *9 (N.D. Cal. June 12, 2014) (WeBoost II), stated the unfair competition claims were dismissed "to the extent they [were] based on Plaintiff's claims precluded by the economic loss rule." Accordingly, WeBoost, as clarified by WeBoost II, offers no support for the proposition that California courts apply the economic loss rule to bar statutory claims.

Defendants' remaining arguments are also unpersuasive. When California's legislature enacted CUTSA, it provided that CUTSA "does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets," unless otherwise stated. Cal. Civ. Code § 3426.7(a). Thus, as a default, CUTSA supplements but does not supplant existing laws relating to trade secrets.

California's legislature also provided that CUTSA "does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret . . . ." Cal. Civ. Code § 3426.7(b). This savings clause "expressly allows for

claims seeking 'contractual remedies, whether or not based upon misappropriation of a trade secret.'" <u>Loop AI Labs Inc.,</u> <u>v. Gatti</u>, No. 15-cv-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (citation omitted). If Defendants were correct that California's legislature intended to tie the economic loss rule to CUTSA, then the inclusion of the savings clause would be meaningless.

Therefore, the Motion is denied to the extent it seeks dismissal of the CUTSA claim under the economic loss rule.

### 2. <u>Section 1668 and the limitation of liability</u>

Defendants argue the agreement's limitation-of-liability clause should be applied to Connectus's CUTSA claim. (Doc. # 206 at 8-9). Although the Court previously agreed the limitation-of-liability clause capped any damages awarded for breach of contract, the Court cannot say the same for the CUTSA claim. As Connectus notes by way of citation,

> [i]t is now settled—and in full accord with the language of the statute—that notwithstanding its different treatment of ordinary negligence, under section 1668, "a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law," regardless of whether the public interest is affected.

<u>Health Net of Cal., Inc. v. Dep't of Health Servs.</u>, 6 Cal. Rptr. 3d 235, 243 (Cal. 3d Dist. Ct. App. 2003) (citations

omitted and second alteration in original). The court continued by stating, "section 1668 prohibits the enforcement of any contractual clause that seeks to exempt a party from liability for violations of statutory and regulatory law, regardless of whether the public interest is affected." Id. at 244. As such, Defendants' Motion is denied to the extent it seeks to have the CUTSA claim dismissed or damages awarded thereunder capped per the limitation-of-liability clause.

### E.   **Pre-Dispute Waiver of Jury Trial**

Defendants seek to strike Connectus's demand for a jury trial. (Doc. # 214). For the reasons that follow, the Court declines to strike the demand.

#### 1.   **All means all**

Defendants argue that "[w]hile Connectus and Defendants selected California state law in the SLA's general choice-of-law provision, they expressly recited and incorporated **federal law** . . . into their SLA's separate jury trial waiver provision." (Id. at 3). In other words, Defendants argue that although California law explicitly governs all other aspects of the agreement, the parties intended the jury-waiver provision to be governed by federal law. Relatedly, Defendants contend the waiver evidenced in the agreement was voluntarily and knowingly made. (Id. at 3-5).

18

The argument that the parties intended to exempt the jury-waiver provision from the choice-of-law provision fails to persuade the Court. The parties' agreement states:

> **all** matters relating hereto shall be governed by the laws of . . . California. . . . Each of the parties agrees that it shall not seek a jury trial in any proceeding based upon or arising out of or otherwise related to this Agreement . . . and each of the parties hereto waives any and all right to such jury trial. AMPUSH and VENDOR[, i.e., Connectus,] acknowledge that the foregoing waiver is knowing and voluntary.

(Doc. # 200-1 at ¶ 6) (emphasis added).

The agreement's plain language shows "all matters relating" to the agreement "shall be governed by the laws of . . . California." (Id.). Because the parties expressly agreed all matters relating to the agreement would be governed by California law, the Court will not infer the parties intended to exempt the jury-waiver provision from the choice-of-law provision, for to do so would require the Court to say that "all" does not really mean "all."

## 2.   The *Erie* problem

Whether federal or state law applies is an issue resolved by federal law. See generally Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Because this Court sits within the Eleventh Circuit Court of Appeals, it is bound by Eleventh Circuit precedent. The parties, however, do not provide any

19

analysis of how the Eleventh Circuit approaches issues arising under _Erie_.

### a. _Erie_ framework

In _Esfeld v. Costa Crociere, S.P.A._, the court laid out the "steps [that], when taken together, constitute the proper analysis that a district court should employ in cases involving _Erie_ issues." 289 F.3d 1300, 1307 (11th Cir. 2002). "The first step . . . is to determine whether state and federal law conflict with respect to the disputed issue before the district court. If no conflict exists, then the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue at hand. . . ." _Id._ at 1306-07 (internal citations omitted). "Thus, [a court's] first determination is whether [the federal law] and [the state law] can be applied harmoniously . . . ." _TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan_, 625 Fed. Appx. 403, 406 (11th Cir. 2015).

But,

> if the applicable state and federal law conflict, the district court must ask whether a congressional statute or Federal Rule of Civil Procedure covers the disputed issue. . . . If a federal statute or rule of procedure is on point, the district court is to apply federal rather than state law. . . . If no federal statute or rule is on point, then the court must determine whether federal judge-made

> law, rather than state law, should be applied. . .
> .

Esfeld, 289 F.3d at 1307 (internal citations and footnote
omitted).

> In making this determination respecting federal
> judge-made law, the district court should begin its
> inquiry by deciding whether failure to apply state
> law to the disputed issue would lead to different
> outcomes in state and federal court. . . . That is,
> with respect to the state law standard at issue,
> the court must ask: "Would application of the
> standard have so important an effect upon the
> fortunes of one or both of the litigants that
> failure to apply it would unfairly discriminate
> against citizens of the forum State, or be likely
> to cause a plaintiff to choose the federal court?"
> . . . If the answer is "no," then the district court
> should apply federal judge-made law. If the answer
> is "yes," meaning that state law is outcome-
> determinative, the court must apply the state law
> standard, unless affirmative "countervailing
> federal interests" are at stake that warrant
> application of federal law. . . .

Id. (internal citations and footnote omitted).

### b.   selecting applicable law

California's Constitution "treats the . . . right to a

jury resolution of disputes that have been brought to a

judicial forum as fundamental, providing that in 'a civil

cause,' any waiver of the inviolate right to a jury

determination must occur by the consent of the parties to the

cause as provided by statute." Grafton Partners L.P. v. Super.

Ct., 116 P.3d 479, 481 (Cal. 2005) (citation omitted and

original italics removed). Section 631, the statute implementing the preceding constitutional provision, allows for "six means by which the right to jury trial may be forfeited or waived," Id.; namely,

> (1) By failing to appear at the trial[;]
> (2) By written consent filed with the clerk or judge[;]
> (3) By oral consent, in open court, entered in the minutes[;]
> (4) By failing to announce that a jury is required, at the time the cause is first set for trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation[;]
> (5) By failing to timely pay the fee described in subdivision (b), unless another party on the same side of the case has paid that fee[;] and
> (6) By failing to deposit with the clerk or judge, at the beginning of the second and each succeeding day's session, the sum provided in subdivision (e).

Cal. Civ. Code § 631(f). By its terms, "section 631 does not authorize predispute waiver[s] of" the right to trial by jury. Grafton Partners, 116 P.3d at 488.

For its part, federal law addresses whether a waiver of a federal constitutional right has occurred. Brookhart v. Janis, 384 U.S. 1, 4 (1966). Federal law presumes waiver has not occurred. Id. But a party may show waiver by establishing the waiving party relinquished the right knowingly and voluntarily. Bakrac, Inc. v. Villager Franchise Sys., Inc.,

22

164 Fed. Appx. 820, 823 (11th Cir. 2016). States, though, "are free to provide . . . more protection than the United States Constitution requires"; in other words, the knowing-and-voluntary standard is the floor, not the ceiling. <u>Justice v. City of Peachtree City</u>, 961 F.2d 188, 194 n.1 (11th Cir. 1992).

Defendants do not identify a particular conflict between California law and federal constitutional law. Rather, they argue only that California law is "seemingly contrary" to the federal constitutional standard. (Doc. # 214 at 2). A closer looks reveals otherwise.

The first step is "to determine whether state and federal law conflict with respect to the disputed issue before" a court. <u>Esfeld</u>, 289 F.3d at 1306-07. The disputed issue before the Court here is whether California's prohibition against predispute jury-waiver provisions conflicts with the federal standard that a waiver must be knowingly and voluntarily made. The next question is can the two be harmoniously applied? <u>See TransUnion Risk & Alt. Data Sols.</u>, 625 Fed. Appx. at 406.

Section 631 does not allow parties to waive the right to a jury trial before a dispute. Federal constitutional law requires any waiver to be knowingly and voluntarily made, but it does not speak in terms of temporality. The two therefore

Case 8:15-cv-02778-VMC-JSS   Document 222   Filed 03/28/17   Page 24 of 24 PageID 13286

do not conflict. To be sure, determining the point in time when a party putatively waived a right is distinct from determining whether that supposed waiver was knowing and voluntary.

Because California's ban against predispute jury-trial waivers does not allow for waiver of a federal right by a measure less than the knowing-and-voluntary standard, the two can be harmoniously applied. Since the two can be harmoniously applied, under Esfeld and TransUnion Risk & Alt. Data Sols., the analysis proceeds no further. California law—the law the parties bargained for—renders the jury-waiver provision ineffective because it was made before the dispute arose.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Ampush Media, Inc. and DGS Edu, LLC's Joint Motion to Partially Strike/Dismiss Plaintiff's Third Amended Complaint (Doc. # 206) and Defendants' Joint Motion to Strike Jury Demand (Doc. # 214) are **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of March, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

24